## In re STEVENS.

Court of Customs and Patent Appeals.
December 19, 1929.

Patent Appeal No. 2193.

Ira L. Nickerson, of New York City, for appellant.

T. A. Hostetler, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Judge. This is an appeal from a decision of the Board of Appeals, affirming the decision of the Examiner, rejecting claims 1, 2, 13, 14, and 15 in appellant's application for an alleged invention relating to a tool retaining coupling for percussive machines.

Claim 15 is illustrative. It reads:

"15. A tool retaining coupling for percussive machines comprising a cylindrical member adapted to be secured to the percussive machine and to receive the shank of a working tool provided with a collar, an abutment for the tool collar within said cylindrical member, a cylindrical cushion member arranged to surround the tool shank between

its collar and said abutment, and split leather washers at both ends of said cushion member arranged closely to fit the tool shank and to fill the intervening space between the tool shank and said cylindrical member thereby to prevent undue wear and fraying of said cushion member."

The claims in question were rejected by the tribunals of the Patent Office on the following references: Jimerson, 1,481,641, Jan. 22, 1924; Bates, 364,081, May 31, 1887.

Appellant's application discloses a "coupling sleeve" adapted to be secured, by means of screw threads, to a percussive machine. The "coupling sleeve" has an opening at its outer end of sufficient size to receive the collar on the shank of a working tool, such as a "clay digger spade." Inwardly of the opening in the "coupling sleeve," and surrounding the tool shank, is a split abutment member. A cylindrical rubber cushion is interposed between the collar on the shank of the working tool and the abutment. A split leather washer is placed at each end of the rubber cushion to prevent it from becoming frayed.

The patent to Jimerson shows a tool with a collar, coupling sleeve, rubber cushion or buffer, and split metallic members at each end of the rubber cushion. We quote therefrom:

"* * * The rubber buffer is located within the barrel nut forming the front head of the tie tamper and a split metallic buffer washer is preferably arranged between the buffer and the outer end of the barrel nut over the opening in the end of the barrel nut through which the collared shank of the tamper steel passes in assembling the parts, so that said washer closes the opening, protects the buffer and prevents the buffer from squeezing through the hole in said end. * * *

"A flanged split bushing F loosely surrounds the shank of the steel forwardly of the collar G and extends into the front end of the cylinder A. The two parts of the split bushing F are formed with a flange G in this instance bearing against the outer end of the cylinder. Sufficient space is maintained between the opposed ends of the sleeve and split bushing to permit limited movement of the collar and steel in said space. * * *

"The outer end O of the barrel nut is provided with an aperture P of sufficient size to permit the entrance of the collar O of the steel and the buffer washer J between the buffer H and the end O of the barrel nut closes this opening when the parts are assembled, protects the buffer, prevents the buffer from becoming distorted and damaged by shock and pressure which would otherwise tend to force the material of the buffer through the aperture P."

Leather buffers or washers are shown in the patent to Bates to prevent metal striking metal.

In its original decision in the case, the Board of Appeals referred to the disclosures in the patents to Bates and Jimerson, and held that the use of leather buffers was but a matter of choice, and that, if metal buffers did not sufficiently protect the rubber cushion, the substitution of leather for metal washers would not amount to invention.

In appellant's petition for rehearing, it was claimed that the split metallic buffer or abutment at the outer end of the coupling sleeve was provided for the purpose of supporting the rubber cushion and to close the opening in the sleeve, and that appellant had supplied an additional member, to wit, a leather washer or buffer between the metal abutment and the rubber cushion.

Concluding his argument on the issue just referred to, counsel for appellant said:

"Thus the point involved in each of the appealed claims is *not* that of mere substitution of material but the utilization of one or more additional elements in an old structure to perform a distinctly new function."

With reference to this contention, the Board of Appeals said:

"* * * In appellant's construction there is no direct abutting action between the tool collar and the member 6. Hence it is our view that the inturned portion O of the barrel nut L of the Jimerson patent may serve as an abutment for the collar on the tool through the member F having a flange G. With this view of the case the only question involved in the rejection of the claims is that of substitution of a leather washer for the metal washer J of the Jimerson patent. The substitution is taught we think, by the Bates patent."

The precise issue relates to the leather washers as added features to the Jimerson disclosure. Their sole purpose, as has been stated, is to give greater protection to the rubber cushion. We think it unnecessary to enter upon a discussion of the technical differences, if any, between the device disclosed by appellant and the references cited.

Assuming, for the purpose of this decision, that counsel for appellant is technically correct in the contention that appellant has interposed between the metal abutment and the rubber cushion, shown in the patent to Jimerson, an additional member—a split leather buffer—for the protection of the upper end of the rubber cushion, and that he has sub-

stituted, a split leather buffer for the metal member shown at the collar end of the shank in the Jimerson patent, and that, by means of such leather buffers, the fraying of the rubber cushion has, to a degree, been prevented, we are of opinion, nevertheless, that all he has done is to give application to the well-known truths, that a washer will act as a buffer and prevent wear, and that the commonplace pliable leather washers are more appropriate for some purposes than those composed of metal. Surely it is not the exercise of the inventive faculties to substitute a leather for a metal washer, or to supply an additional leather washer for the precise and familiar purposes for which such washers are commonly used. If it is, then every mechanical improvement may be said to result from the exercise of the inventive faculties.

In the case of Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225, 231, 27 L. Ed. 438, the Supreme Court said:

"The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

We think the quoted excerpt has particular application to the issues before us.

For the reasons stated, the decision is affirmed.

Affirmed.